```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------- x
 BELEN AMACIO,

                    Plaintiff,
                                              MEMORANDUM
          - against -                         & ORDER

 VERONICA GAUDIUSO and                        Civil Action No.
 ANTHONY GAUDIUSO,                            CV-03-1208 (DGT)(VVP)
                    Defendants.    x
----------------------------------------------- x
 VERONICA GAUDIUSO and
 ANTHONY GAUDIUSO,

          Third-Party Plaintiffs,

           - against -

 CITY OF NEW YORK,

          Third-Party Defendant.
                                   x
----------------------------------------------- x
```

TRAGER, J.

Third-Party Plaintiffs Veronica and Anthony Gaudiuso (collectively "third-party plaintiffs" or "defendants Gaudiuso") brought this third-party action against third-party defendant New York City (the "City"), seeking a judgment that the City was partially or wholly liable for an accident that occurred between third-party plaintiffs and plaintiff Belen Amacio. Following completion of discovery, the City now moves for summary judgment dismissing the third-party complaint.

**Background**

On May 21, 2001, at about 6:05 p.m. at the intersection of Ionia Avenue and Foster Road, on Staten Island, New York, a vehicle operated by defendant Veronica Gaudiuso and owned by Anthony Gaudiuso struck, from the side, a motor vehicle operated by plaintiff Belen Amacio. See Third-Party Complaint ("Third-Party Comp.") ¶ 6. The accident allegedly occurred when Veronica Gaudiuso did not stop at a stop sign located at the southwest corner of the intersection. See Third-Party Comp. ¶ 8.

On or about March 11, 2002, plaintiff commenced a diversity tort action in federal court against defendants Gaudiuso to recover alleged personal injury damages in the amount of two million dollars. Plaintiff's Complaint ¶ 27.

Defendants Gaudiuso subsequently impleaded the City, alleging that at the time of the accident, a tree owned by the City ("the tree") obscured the stop sign at the intersection where the accident occurred. See Third-Party Comp. ¶ 7. Defendants Gaudiuso claim that the City's failure "to plant, to position and to maintain the tree in a manner to prevent the obstruction of the stop sign from the view of operators of motor vehicles" caused the accident in whole or in part. Third-Party Comp. ¶ 8. Moreover, defendants Gaudiuso allege that "the damages that plaintiff sustained were caused solely by the negligence, carelessness and recklessness of the third-party

2

defendants." Third-Party Comp. ¶ 11.

## Discussion

In order for the City to be found liable, it must have had actual or constructive notice of the allegedly obstructed stop sign. Brown v. City of New York, 154 A.D.2d 325, 326, 545 N.Y.S.2d 801 (2d Dept. 1989) (dismissing claims against city where there was no evidence the City had actual or constructive notice of a missing stop sign); Brandt v. City of New York, 86 A.D.2d 574, 446 N.Y.S.2d 303 (1st Dept. 1982) (dismissing claims against city where there was no evidence the City had actual or constructive notice of a bent and twisted stop sign facing in the wrong direction). Actual notice is "notice given directly to, or received personally by, a party." Blacks Law Dictionary 1090 (8th ed. 2004). Constructive notice is "notice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of." Id.

**(1)**

Here, there is no evidence that the City received actual notice of the allegedly obstructed stop sign prior to the accident. The Department of Transportation ("DOT") is responsible for monitoring the maintenance of any trees owned by the City. It was DOT's practice and procedure before and on May 21, 2001, the date of the accident, not to inspect stop signs for

3

obstructions without first receiving a complaint or a request. A review of DOT's records establishes that it received no complaints or any other communications concerning a tree or a tree's branches obstructing a stop sign at the southwest corner of the intersection where the accident occurred. In addition, DOT has no record that any DOT traffic control inspector observed or inspected the obstruction of the stop sign during the course of his daily work. Sept. 2, 2004 Aff. of Michael Harnett, DOT's Chief Borough Engineer, ¶¶ 8, 11, 12.

The New York City Department of Parks and Recreation ("Parks Department") is responsible for the actual grooming of city-owned trees. The Parks Department's procedure requires that it receive either an oral or written request for inspection from any person or entity, including another City agency, with a concern about a city street tree before conducting an inspection of any city-owned trees. In this case, like the DOT, the Parks Department, according to its records, never received any complaints or requests for an inspection of any of the city-owned trees at this particular intersection.

Furthermore, the New York City Police Department ("NYPD") did not receive any complaint from the general public or a fellow city agency or make any report of an obstructed stop sign at the intersection where the accident occurred. Moreover, there is no record of any accident at this intersection prior to May 21,

2001. According to the 123 Precinct's Traffic Intelligence Reports ("TIR"), there is no record of any road or sidewalk condition at the intersection prior to or on May 21, 2001. See Sept. 7, 2004 Aff. of Daniel Byrnes, NYPD Sergeant, ¶¶ 7, 8.a, 8.b, 8.c.

Finally, Community Board Three of the Borough of Staten Island ("Community Board Three") received no complaints of any kind about an obstruction at the intersection prior to the May 21, 2001 accident at issue. See August 25, 2004 Affidavit of Marie Bodnar, District Manager of Community Board Three, ¶ 3.

The evidence establishes that the City did not have actual notice prior to the May 21, 2001 accident that the tree's branches were obstructing the stop sign at the intersection of Foster Road and Ionia Avenue.

**(2)**

There still remains the legal issue whether the City can be held liable based on constructive notice of the alleged obstruction of the stop sign prior to the accident. The City argues that under Monteleone v. Incorporated Village of Floral Park, 74 N.Y.2d 917, 550 N.Y.S.2d 257 (1989), and Zizzo v. City of New York, 176 A.D.2d 722, 475 N.Y.S.2d 966, more than constructive notice is required, and the City cannot be found liable unless it received actual notice of the obstructed stop sign because the obstruction occurred by virtue of the City's

5

simple nonfeasance.  Monteleone, 74 N.Y.2d at 917, 550 N.Y.S.2d at 257 (finding actual notice necessary where plaintiff was struck in the eye by a low lying tree branch overhanging sidewalk); Zizzo, 176 A.D.2d at 722, 475 N.Y.S.2d at 966 (2d Dept. 1991) (finding actual notice necessary where plaintiff suffered injuries when he tripped on overgrown roots of a city-owned tree).  However, these cases are inapplicable because they involved the application of specific municipal statutes explicitly calling for actual notice of the conditions complained of in order to trigger liability.  In the presence of such a statute, constructive notice would have sufficed only if the municipality had been affirmatively negligent; however, simple nonfeasance, for instance, failing to prune the trees that caused the injuries, were governed by the statute's actual notice requirement.  Monteleone, 74 N.Y.2d at 919, 550 N.Y.S.2d at 257; Zizzo, 176 A.D.2d at 723, 475 N.Y.S.2d at 966.  As plaintiff (and third-party plaintiffs) contend correctly, the City does not have a specific statute requiring actual notice under these circumstances and, therefore, constructive notice is all that plaintiff need establish.

To meet the requirement that the City have constructive notice the plaintiff first contends that from the time the City plants a tree, the City is able to foresee that the tree will grow and that its branches will spread.  Thus, the City should be

deemed to have constructive notice of an obstruction in these types of cases because the vegetation has existed for a sufficiently-long period of time as to be "open and obvious to anyone with an observant and seeking eye." Pl. Belen Amacio's Mem. of Law in Opp. to Def. City of New York's Mot. for Summ. J. at 5.  Considering the wide variety of trees planted by the City, the various rates at which each type grows and their disparate locations, this argument makes little sense.  As a practical matter, the City cannot possibly predict which trees will grow in a certain way so as to impede traffic.  The City's simple act of planting a growing tree is insufficient to establish constructive notice as indicated by <u>Monteleone</u> and <u>Zizzo</u>.

But this case is not merely about a hazardous condition created by an overgrown tree.  New York state courts differentiate between the type of notice required where overgrown vegetation allegedly caused a hazardous condition and, by contrast, the type of notice required where stop signs are obstructed or otherwise defective.  Those courts have consistently held that an obstructed stop sign is defective and, therefore, statutes requiring actual notice do not apply to obstructed stop signs.  <u>See</u>, <u>e.g.</u>, <u>DiSanto v. Town of Islip</u>, 212 A.D.2d 500, 622 N.Y.S.2d 313, 314 (2d Dept. 1995); <u>Torres v. Galvin</u>, 189 A.D.2d 870, 871, 592 N.Y.S.2d 788 (2d Dept. 1993) ("[T]he prior written notice laws should be strictly construed

and refer 'to physical conditions in the streets and sidewalks . . . which do not immediately come to the attention of the Village officers unless they are given actual notice thereof' . . . and that they do not apply to claims of defective stop signs." (internal citations omitted)). It follows that the New York state courts anticipated that municipalities can be held liable based on constructive notice of obstructed stop signs.

Moreover, the distinction drawn by the New York cases between notice required for overgrown vegetation and defective stop signs makes practical sense. The six thousand stop signs on Staten Island have fixed, knowable and unchanging locations, while trees and other vegetation are in a constant state of flux. Although regular inspections of trees may be impractical and even futile, inspections of stop signs and their immediate surroundings is both feasible and likely to be productive. For this reason, the above cited New York courts' opinions finding that constructive notice based on nonfeasance sufficed to trigger a municipality's liability in cases involving obstructed or otherwise defective stop signs.

The City argues that the constructive notice standard applied to other municipalities should not apply to the City because of the unique problems facing a city as large as New York. In <u>DiSanto v. Town of Islip</u>, <u>Torres v. Galvin</u> and <u>Finn v. Town of Southampton</u>, the courts denied the defendant towns

8

summary judgment on the basis that there were material issues of fact as to whether each had constructive notice of vegetation obstructing stop signs merely by virtue of the fact that the defendant towns owned the trees. DiSanto, 212 A.D.2d at 500, 622 N.Y.S.2d at 313; Torres, 189 A.D.2d at 870, 592 N.Y.S.2d at 788; Finn v. Town of Southampton, 289 A.D.2d 285, 734 N.Y.S.2d 215 (2d Dept. 2001). The City argues that these cases are distinguishable from the present case because the defendants were relatively small municipalities. DiSanto, 212 A.D.2d at 500, 622 N.Y.S.2d at 313; Torres, 189 A.D.2d at 870, 592 N.Y.S.2d at 788; Finn, 289 A.D.2d at 285, 734 N.Y.S.2d at 215. In the present matter, the City asserts it has thousands of stop signs, hundreds of thousands of street trees, a large geographic area and a limited number of employees to inspect stop signs for obstructions. However, regardless of the feasability of regular inspections in cities, the New York courts have not differentiated between urban and suburban areas in assessing the liability of a municipality for an obstructed stop sign. See, e.g., Dishaw v. Cent. N.Y. Reg'l. Transp. Auth. (CENTRO), 179 A.D.2d 1088, 579 N.Y.S.2d 530 (4th Dept. 1992) (finding that actual notice of obstructed stop sign not necessary in case against the City of Syracuse).

Despite this case law, the City claims that, as a matter of law, it did not have constructive notice of the obstructed stop

sign because its agencies cannot possibly inspect all the stop signs in the City for possible obstructions by trees.  Both DOT and the Parks Department assert that the City would be greatly burdened were it required to make regular inspections of more than six thousand stop signs on Staten Island.  Such a policy would require the relevant departments to divert their limited resources and personnel from other, more important tasks for these regular inspections.  A more sensible policy, the City contends, is the one that was in effect at the time of the accident, whereby the DOT and the Parks department perform their respective inspections only after receiving complaints or requests.[1]

Moreover, the City argues, neither can the NYPD or Community Board Three conduct inspections of all the stop signs in New York City and/or on Staten Island.  Quite simply, the NYPD's concern is law enforcement, while Community Board Three addresses community issues and the coordination of municipal services.  Furthermore, as noted above, before the accident in question occurred, no accident had previously occurred at the intersection.  All of these arguments, which no doubt have much

---

[1] Although DOT's inspectors will tend to overgrowth and other such situations if happened upon during their daily tasks, DOT has no record that a DOT traffic control inspector observed and inspected the obstruction of the stop sign during the course of his daily work during the time period of May 21, 1996 through May 21, 2001.

force to them, however, have not been adopted by the New York courts.

(3)

Having resolved that nonfeasance constructive notice is sufficient, plaintiff (and third-party plaintiffs) claim that their constructive notice argument is bolstered by the size of the tree and density of the branches obstructing the stop sign, which they cite as evidence that the condition had existed for a substantial time before the accident occurred. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 837, 501 N.Y.S.2d 646 (1986). Upon inspection of the photograph of the tree and obstructed stop sign, it is clear that the branches are covering the stop sign, but it is not clear how long the condition existed. See Pl.'s Ex. 3 (photograph of intersection). One way to determine when the obstruction began would be to look at what type of tree it is, but the record does not disclose this fact. Although plaintiff bears the burden of proof on this issue, since the parties have focused on the legal issues and not on the factual issue, it is appropriate that this issue be resolved at trial because it cannot be said as a matter of law

that the obstruction of the stop sign did not exist for a sufficient time to put the City on notice. As such, there is a material issue of fact regarding how long the situation existed and whether the City, therefore, should be found to have constructive notice of the potentially dangerous condition.

## Conclusion

Because there is a material issue of fact regarding whether the City had constructive notice that a tree obstructed the stop sign in question, the City's motion for summary judgment dismissing the third-party complaint is denied.

Dated: Brooklyn, New York
       July 7, 2005

                              SO ORDERED:


                                     /s/
                              David G. Trager
                              United States District Judge